COMMONWEALTH vs. ROBERT STILLWELL.

Suffolk.    March 4, 1974. — July 12, 1974.

Present: QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Homicide. Jury and Jurors. Constitutional Law,* Due process of law. *Practice, Criminal,* Capital case, Examination of jurors.

In a first degree murder case tried prior to *Furman* v. *Georgia,* 408 U. S. 238 (1972), a judge properly excluded five veniremen for holding opinions on capital punishment which would have precluded them from rendering a verdict based on the evidence. [2-4]

In a case tried prior to *Stewart* v. *Massachusetts,* 408 U. S. 845 (1972), a judge properly excluded four veniremen, on the basis partly of their reactions to the requirement that a finding of guilty of first degree murder would, without unanimous recommendation of the jury to the contrary, compel the death penalty. [3-4]

This court declined to exercise its powers under G. L. c. 278, § 33E, to reduce a verdict of guilty of first degree murder against a defendant who, after arguing with the victim, left the scene for twenty or thirty minutes, obtained a gun, returned to the scene, and shot the victim shortly thereafter. [4-6]

INDICTMENT found and returned in the Superior Court on November 7, 1969.

The case was tried before *Paquet,* J.

*William P. Homans, Jr.,* for the defendant.

*John T. Gaffney,* Assistant District Attorney (*James M. McDonough,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

QUIRICO, J.    The defendant was indicted for the crime of

murder in the first degree of Jasper Parker. After a trial held subject to G. L. c. 278, §§ 33A-33G, a jury found him guilty as charged and recommended that the sentence of death not be imposed. See G. L. c. 265, § 2, as amended through St. 1956, c. 731, § 12.[1]

The case is before us on the defendant's appeal based on one assignment of alleged error by the trial judge in finding and ruling that certain prospective jurors should be excused because they did not stand indifferent.[2] The defendant also asks this court to review the case on the law and the facts as provided in G. L. c. 278, § 33E, and to reduce the verdict to one of guilty of the crime of manslaughter.

1. *Selection of the jury.* Before empanelling the jury the judge gave preliminary instructions to the veniremen to the effect that the indictment charged the crime of murder in the first degree, and that if the defendant were found guilty of murder in the first degree the death penalty would apply unless the jury unanimously voted to recommend that it not be imposed. He then informed them of the various questions to be put to each venireman drawn to serve in the trial, including a series of questions relating to his opinion about the death penalty.[3]

---

[1] The verdict was returned on April 16, 1971, thus preceding *Furman* v. *Georgia,* 408 U. S. 238 (1972).

[2] We note that although the defendant claims there was error in excluding five prospective jurors, his trial counsel (who is not his counsel on appeal), saved an exception on his behalf to the exclusion of only one of the five. The saving of an exception is essential to an appeal under G. L. c. 278, §§ 33A-33G. *Commonwealth* v. *McCauley,* 355 Mass. 554, 558 (1969). *Commonwealth* v. *Underwood,* 358 Mass. 506, 508-510 (1970), and cases cited. We consider the question concerning the exclusion of the jurors as to whom no exception was saved only because this is a "capital case," c. 278, § 33E, bringing into play our power of extraordinary review under that section. Compare *Commonwealth* v. *McAlister,* 365 Mass. 454, 457, fn. 1 (1974).

[3] These questions were intended to determine (a) whether the venireman had an opinion on capital punishment; (b) whether such opinion, if any, would preclude him from finding the defendant guilty of a crime punishable by death; (c) whether such opinion, if any, when coupled with his knowledge that it would require a unanimous verdict to recommend that the death penalty not be imposed on a conviction for murder in the first degree, would preclude him from convicting a person of such a crime; and (d) whether he had any opinion which would preclude him from voting to recommend that the death penalty not be imposed in such a case. G. L. c. 278, § 3.

The judge, after examining each venireman along the lines indicated in his preliminary instructions, excluded five persons from serving as jurors in the case. As to each of the five the judge found that he held opinions on capital punishment which precluded him from rendering a verdict based on the evidence which might be presented at the trial, and that he was therefore not indifferent. The evidence supports the judge's findings as to each person.

The defendant contends that it was error to exclude these persons as jurors because (a) they were excused only because they held opinions against the death penalty; (b) the crime charged was not punishable by death, as later established by the decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972); and (c) the exclusion of veniremen with such opinions substantially increased the risk of the defendant's conviction. This claim is identical to that raised by the defendant in *Commonwealth* v. *McAlister*, 365 Mass. 454, 457 (1974), of very recent date, and the same argument is offered in support thereof, counsel for the defendant being the same in both cases. In that case, after full consideration of the issue, we decided it against the defendant, and we make the same decision here. There is no need for repeating what we said in the *McAlister* decision.

The defendant also raises a question about the empanelling of the jury which was not raised in the *McAlister* case. In *Commonwealth* v. *McNeil*, 328 Mass. 436, 441-442 (1952), we held that a jury verdict finding a defendant guilty of murder in the first degree "has its usual consequence of death, unless the jury join in a unanimous recommendation of mitigation." That rule was reviewed and reaffirmed by this court in *Commonwealth* v. *Stewart,* 359 Mass. 671, 676 (1971), judgment vacated per curiam, 408 U. S. 845 (1972). The judge in this case instructed the veniremen in accordance with the rule of the *McNeil* and *Stewart* cases.

The defendant points out that the judge's finding that four of the veniremen did not stand indifferent was based at least in part on their reaction to the stated *McNeil* and *Stewart* requirement of a unanimous vote to recommend

that the death penalty not be imposed. He then argues that this rule is unconstitutional and that he was therefore prejudiced by the judge's instruction relating to it. We do not agree.

The defendant's argument rests entirely on the United States Supreme Court reversal of the death penalty in the *Stewart* case which was handed down simultaneously with that court's decision in *Furman* v. *Georgia*, 408 U. S. 238 (1972). *Stewart* v. *Massachusetts*, 408 U. S. 845 (1972). He contends that this reversal must be read to have declared unconstitutional our rule requiring unanimity for a recommendation against the death penalty. The total statement of that court in disposing of the *Stewart* case was the following: "The appellant in this case was sentenced to death. The imposition and carrying out of that death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *Furman* v. *Georgia*, . . . [*supra*] 238. The motion for leave to proceed in *forma pauperis* is granted. The judgment is therefore vacated insofar as it leaves undisturbed the death penalty imposed, and the case is remanded for further proceedings." We do not read this language as having the effect which the defendant contends it has on the rule of our *McNeil* and *Stewart* decisions. The defendant is entitled to no relief on this claim.

2. *Consideration under G. L. c. 278, § 33E.* As noted, the defendant requests that in the exercise of our powers under § 33E we order that the jury verdict of guilty of murder in the first degree be reduced to a verdict of guilty of voluntary manslaughter and that the defendant be resentenced accordingly.[4] After reviewing the law and the evidence we have concluded that the defendant is not entitled to relief under § 33E.

---

[4] Although the defendant assigned as an alleged error the denial of his separate motions for directed verdicts of not guilty of murder in the first degree and murder in the second degree, he expressly waived that assignment in his brief stating as the reason therefor that there was "evidence warranting a finding of premeditation." The sufficiency of the evidence to support the jury verdict is thus conceded, but that is not necessarily decisive of the result to be reached in this court's consideration of the case under § 33E.

The homicide at issue in this case arose out of a dispute between the defendant and the victim Parker over a $10 bet made at a game of dice on June 6, 1969. The defendant testified that after arguing with Parker over the money, he left the game, took a taxicab to the house where he had left a gun and some bullets he had purchased a few weeks earlier, and returned to the dice game, the round trip taking twenty to thirty minutes; that on his return he and Parker resumed their argument until a third person gave him $10; that he started to move away when further words were spoken, whereupon he shot Parker; that on the next day he learned that Parker had died from the shooting; and that he fled to Indiana where he lived under an assumed name until apprehended by the police and returned to Boston in June, 1970.

There was more testimony from the defendant which, if believed, tended to prove that he shot Parker in self-defence. The jury were not required to, and obviously did not, believe this testimony. There was extensive testimony from eyewitnesses to the shooting which, if believed, would support the jury verdict of guilty of murder in the first degree.

The question is whether we are dealing with a situation similar to those involved in *Commonwealth* v. *Baker*, 346 Mass. 107, 119 (1963), and *Commonwealth* v. *Ransom*, 358 Mass. 580, 583 (1971), and *Commonwealth* v. *Kinney*, 361 Mass. 709, 713 (1972), where we ordered the entry of a verdict of a lesser degree of guilt; or whether it is a situation similar to those involved in *Commonwealth* v. *Rollins*, 354 Mass. 630, 635 (1968), *Commonwealth* v. *Pratt*, 360 Mass. 708, 715 (1972), *Commonwealth* v. *Deeran*, 364 Mass. 193, 196-197 (1973), *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 311-313 (1973), and *Commonwealth* v. *Rooney*, 365 Mass, 484, 495 (1974), where we held that the interests of justice did not warrant or require us to order any change in the verdict of the jury. We believe it falls within the latter group. A factor common to this case and the cases in that group is that the defendants first had difficulties with their ultimate victims, that they left the scene for a period of

time to obtain weapons, then returned to the scene and committed the homicides. In each case there appears to have been a period of reflection and premeditation after the original difficulties between the parties and before the ultimate homicide.

We conclude that the defendant is entitled neither to a new trial nor to a reduction in the degree of guilt found by the jury.

*Judgment affirmed.*