COMMONWEALTH vs. ROBERT J. SHELLEY.

Norfolk. October 9, 1991. - January 23, 1992.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Practice, Criminal*, Assistance of counsel, Instructions to jury, Presumptions and burden of proof, New trial. *Malice. Error*, Harmless.

A defendant failed to show that he was denied effective assistance of counsel at his murder trial and on appeal based on his claims that, because specific jury instructions on the issues of malice and absence of provocation unconstitutionally shifted the burden of proof to the defendant [694-698] and that, because the instructions to the jury were, as a whole, conflicting [698-699], trial counsel was ineffective for failing to object to those instructions and appellate counsel was ineffective for neither claiming ineffective assistance of trial counsel nor challenging the same instructional errors, where this court found that the jury instructions as a whole were proper and, therefore, that neither counsel was ineffective.

INDICTMENT found and returned in the Superior Court on October 3, 1975.

Following decisions of this court in 374 Mass. 466 (1978), and 381 Mass. 340 (1980), an amended motion for a new trial, filed on February 28, 1990, was heard by· *Roger J. Donahue*, J.

*Gail S. Strassfeld* (*Harvey A. Silverglate* with her) for the defendant.

*James F. Lang*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant appeals from the denial of his amended motion for a new trial, Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979) (which,' if granted, would have resulted in a third trial) arguing that trial and appellate coun-

sel deprived him of effective assistance of counsel.[1] The defendant was twice tried and convicted of murder in the first degree. This court reversed the initial conviction and ordered a new trial, *Commonwealth* v. *Shelley*, 374 Mass. 466, 474 (1978), and affirmed the second conviction, *Commonwealth* v. *Shelley*, 381 Mass. 340, 355 (1980) (*Shelley II*).[2] In this appeal, the defendant claims that, because the jury instructions improperly shifted the burden of proof to the defendant, trial counsel was ineffective for failing to object to those instructions and appellate counsel was ineffective for neither claiming ineffective assistance of trial counsel nor challenging the same instructional errors.[3] We conclude that the jury

---

[1]The procedural background of this appeal is as follows: On January 7, 1987, the defendant filed pro se a motion for a new trial, and on January 9, 1987, a Superior Court judge denied the motion. Thereafter, the defendant petitioned a single justice of this court for leave to appeal that ruling. *Leaster* v. *Commonwealth*, 385 Mass. 547 (1982). On February 28, 1990, before any action was taken on the petition, the defendant, now represented by counsel, filed an amended motion for a new trial. On March 6, 1990, the Superior Court judge denied, without prejudice, the defendant's amended motion for a new trial pending an appellate review of his ruling denying the defendant's pro se motion. The defendant then petitioned a single justice of this court for leave to appeal from the denial of the amended motion for a new trial. On August 15, 1990, a single justice denied the defendant's pro se motion for a new trial but remanded the defendant's amended motion for a new trial to the Superior Court for consideration on the merits of defendant's claim of ineffective assistance of counsel with respect to the failure to challenge certain of the jury instructions. The Superior Court judge denied the defendant's amended motion for a new trial, ruling that the charge as a whole appropriately placed the burden of proof on the prosecution as to malice, criminal responsibility, and lack of provocation. The defendant again petitioned a single justice for leave to appeal this ruling. On February 25, 1991, a single justice granted the defendant leave to appeal on the ground that the ineffective assistance of counsel issue contained in the motion presented a new and substantial question that ought to be heard by the full court. G. L. c. 278, § 33E (1990 ed.).

[2]The facts of the case and a summary of the evidence entered in the second trial are reported in *Commonwealth* v. *Shelley*, 381 Mass. 340, 355 (1980)(*Shelley II*).

[3]The defendant was represented by different counsel at the trial and appellate levels.

instructions as a whole were proper and therefore that neither counsel was ineffective. Consequently, we affirm.

To prevail on an ineffective assistance claim, the defendant must show that counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer." *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 502 (1981), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Essential to the defendant's claim of ineffective assistance of both trial and appellate counsel is whether the challenged instructions unconstitutionally shifted the burden of proof to the defendant.

1. *The challenged instruction.* The defendant claims that the unconstitutional shift occurred on the issues of malice and absence of provocation. The defendant challenges specific portions of the instructions. For example, after defining malice, the judge said: "*Whenever a homicide is shown* to have been committed without justification and as a result of a deliberate act, *it is sufficiently proved to have been done with malice aforethought*" (emphasis added). He also said that malice "is not disproved by showing that the accused had no personal ill will against the victim." He further stated that "malice *is* implied from any deliberate or cruel act against another, however sudden," and that "[i]t is not every provocation exciting sudden and angry passion and creating heat of blood that rebuts malice" (emphasis added). He also lapsed to some degree when he stated:

> "[I]n order to find the defendant guilty of the crime of manslaughter and not guilty of murder in the first degree, *you must find that there was no premeditated malice aforethought, that there was no premeditation or malice aforethought*, and if you find him not guilty of murder in the second degree, as I have defined that, *then you must find that he acted under extreme provocation and upon sudden impulse*, and that is how you would arrive at a verdict of voluntary manslaughter as distinguished from first- and second-degree murder" (emphasis added).

The defendant's contention is that these instructions allowed the jury to infer malice and then allegedly shifted to the defendant the burden of disproving it. See *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975); *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). It is true that we have been critical of charges that speak in terms of "finding" the absence of premeditation, malice, or the existence of extreme provocation because, of course, the Commonwealth must prove malice, premeditation, and, in appropriate circumstances, the absence of provocation. See *Commonwealth* v. *Nieves*, 394 Mass. 355, 358, 361 (1985); *Commonwealth* v. *Richards*, 384 Mass. 396, 401-403 (1981); *Connolly* v. *Commonwealth*, 377 Mass. 527, 532-534 (1979); *Commonwealth* v. *Rodriguez*, *supra* at 690-691. But see *Commonwealth* v. *Doucette*, 391 Mass. 443, 450-452 (1984); *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 844-846 (1980). However, those decisions do not support the defendant in this instance. " 'A jury charge must be considered as a whole, not by bits and pieces,'. . . nor by 'fragments lifted from context and then subjected to scrutiny as though each fragment had to stand or fall on its own without the aid of the remainder of the charge' " (citations omitted). *Commonwealth* v. *McInerney*, 373 Mass. 136, 149 (1977). Moreover, "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom* v. *Montana*, *supra* at 514.

Initially, the trial judge told the jury that "a man is presumed innocent until proven guilty beyond a reasonable doubt and the burden of proof is upon the Commonwealth to prove to you ladies and gentlemen that the defendant is guilty as charged." Next, the judge properly defined malice and manslaughter and charged the jury on malice, manslaughter, and lack of provocation, which included the contested language. The judge twice correctly defined criminal responsibility and then twice correctly instructed on the Commonwealth's burden of proof on this issue. Specifically, the judge stated: "The Commonwealth has the burden of

proving beyond a reasonable doubt that the defendant was mentally responsible at the time of the killing . . . . *The defendant has no corresponding burden*" (emphasis added). The judge twice correctly defined the term "reasonable doubt" and stressed it several times throughout his instructions.

Finally, the judge, immediately before dismissing the jury, stated:

> "Now, *the defendant does not have to rebut malice or rebut anything* but in order for there to be a verdict of murder, the prosecution must prove criminal responsibility, malice and the lack of provocation beyond a reasonable doubt. *It must be remembered* that the Commonwealth always has the burden of proof. *The defendant does not have to sustain any burden whatsoever.*

> "On the question of criminal responsibility, once the issue is raised, the burden is upon the Commonwealth to prove to you beyond a reasonable doubt that it has sustained its burden." (Emphasis added).

Again, after the jury submitted questions about the definition of criminal responsibility and how the voluntary use of alcohol had an impact on this definition, the judge correctly instructed them on these issues. Just before dismissing them for a second time he stated:

> "And one further thing. *I would also have you keep in mind* that it is the burden of the Commonwealth to prove to you ladies and gentlemen beyond a reasonable doubt that it has maintained its position in this case" (emphasis added).

Undoubtedly, the challenged language taken in isolation is questionable, but it is neither incorrect when considered in context nor, if incorrect, incapable of correction. It is regrettable that the judge used "finding" language and language

that appears to create a burden-shifting presumption of malice. Nonetheless, the language that appears to create a presumption of malice is negated by the charge, taken as a whole. Throughout his instructions, the judge told the jury in very clear language that the Commonwealth had the burden of proof on all issues, once at the very beginning, twice in the middle, twice at the very end, and again when the jury came back with two questions. The judge correctly instructed on reasonable doubt, the presumption of innocence, and criminal responsibility. Moreover, the judge three times emphasized that the defendant had no burden whatsoever.

Likewise, the "finding" language did not impose any burden on the defendant to introduce evidence nor did it create a conclusive presumption of malice. It is clear from the context that the judge was instructing the jury that they had to find those basic facts beyond a reasonable doubt, as proved by the Commonwealth. *County Court of Ulster County* v. *Allen*, 442 U.S. 140, 157-160 (1979). See *Commonwealth* v. *Ely*, 388 Mass. 69, 76 (1983). In light of the judge's emphatic instruction that "the defendant does not have to rebut malice or rebut anything . . . [and] does not have to sustain any burden whatsoever," we conclude that the challenged instructions were not in error and did not shift to the defendant any burden of proof. See *Commonwealth* v. *McInerney*, *supra* at 151.

Even if the judge's charge had before the final instructions been susceptible to the interpretation argued by the defendant, that final admonition erased any possible doubt that his prior words may have conveyed on the issues of malice, provocation, and burden of proof. We find no *Sandstrom* burden-shifting violation in these instructions.[4] Trial counsel was

---

[4]Although the defendant alleges a *Sandstrom* violation, *Sandstrom* did not address whether and how language that impermissibly shifts the burden of proof may be cured by other language in the charge. *Sandstrom* v. *Montana*, 442 U.S. 510, 518-519 n.7 (1979). This very issue was addressed in *Francis* v. *Franklin*, 471 U.S. 307 (1985), to clarify the effect of *Sandstrom*. In *Francis*, the Court held that curative language cannot merely contradict the constitutionally infirm instruction, it must "*explain*[] the infirm language sufficiently to eliminate" the possibility that a

therefore not ineffective because his failure to object did not "deprive the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Accordingly, appellate counsel could not be deemed ineffective for not raising the issue of trial counsel's failure to object to the instructions.

2. *Ineffective assistance of appellate counsel.* The defendant also claims that the instructions were, as a whole, conflicting, and that under *Francis* v. *Franklin*, 471 U.S. 307, 322 (1985), and *Commonwealth* v. *Repoza*, 400 Mass. 516, 520 (1987), the judge's final instructions were inadequate to cure the alleged preceding errors in the charge. Of course we have already disposed of this argument by ruling that clear language throughout the charge and especially the final paragraph was sufficient to overcome any ambiguity that might have been created in the portions alluded to by the defendant. Furthermore, these cases were decided after the defendant's trial and appeal concluded. Appellate counsel could not be judged ineffective, even if we deemed the instructions improper.

Second, as discussed above, we do not deem the instructions as a whole improper. "[C]onstitutionally erroneous jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole, so that a reviewing court can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth* v. *Repoza*, *supra* at 519. This was not a case where the judge merely gave general instructions on the State's burden and presumption of innocence. See *Sandstrom* v. *Montana*, *supra* at 518 n.7. The judge emphasized the defendant's freedom from any burden throughout the charge. Moreover, his final instructions were not rhetorically inconsistent with the challenged, antecedent charge, because the challenged portions, even

reasonable juror understood the instructions in an unconstitutional manner (emphasis in original). *Id.* at 323 n.8. We have concluded that the challenged instructions do not violate *Sandstrom*. We also have concluded that, if the challenged portions of the instructions contained any error, the judge's final charge cured the error.

taken in isolation, were not so blatantly burden-shifting as those found deficient in *Sandstrom* and *Repoza*.

Finally, the judge's final, specific instructions clearly placed the burden of proof on the Commonwealth as to malice, criminal responsibility, and lack of provocation. These very last instructions were directed to, and remedied, any possible incorrect impressions the challenged instructions may have conveyed. This was not language that merely contradicts a prior infirm instruction, *Commonwealth* v. *Repoza, supra* at 519, but rather explained the Commonwealth's burden with precision where earlier language may have created ambiguity. Again, even assuming error as to the malice and absence of provocation instructions, the judge's error would have been harmless beyond a reasonable doubt because the erroneous instructions could not have misled the jury. Cf. *Commonwealth* v. *Sires,* 405 Mass. 598, 601 (1989). The primary issue at trial was the defendant's criminal responsibility. The issue contested by the defendant was solely that of his criminal responsibility. The evidence of criminal responsibility was strong, see *Shelley II, supra* at 341-345, and we can say beyond a reasonable doubt that the jury would have reached the same conclusion had they not been faced with this charge, even assuming it was erroneous.[5] We find that a reasonable juror only could have interpreted the instructions in a constitutional manner. *Francis* v. *Franklin, supra* at 322-323 n.8. Accordingly, we conclude that the jury were guided by correct instructions in reaching their verdict.[6]

3. *Conclusion.* Because we conclude the Superior Court judge was correct in determining that the trial judge's instructions, viewed in their entirety, were proper, we will not

---

[5] Notably, in *Shelley II* we reached the conclusion that the Commonwealth's evidence was sufficient to permit the jury to find the defendant's guilt beyond a reasonable doubt. *Id.* at 345-348.

[6] The defendant also claims error in the jury instructions on murder in the second degree and extreme atrocity or cruelty. These claims are without merit or support in the record.

disturb the Superior Court judge's decision denying the amended motion for a new trial.

*Judgment affirmed.*